Case 10-08397-8-SWH    Doc 108    Filed 12/13/12    Entered 12/13/12 14:40:40    Page 1 of 12



**SO ORDERED.**

**SIGNED this 13 day of December, 2012.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                          CASE NO.

CHRISTIAN D. WERNESS                              10-08397-8-SWH
JILL WERNESS

DEBTORS

### ORDER DENYING MOTION FOR CONTEMPT AND DENYING MOTIONS TO CLARIFY ORDER APPROVING MODIFICATIONS OF AUTOMATIC STAY

The matters before the court are the debtors' motion to reopen their Chapter 7 case to hold Margaret Melin in contempt of court as well as the motions of Charles B. Kubasko, Crabtree Chiropractic Clinic, P.A. (the "co-defendants") and Ms. Melin to modify this court's order, entered on December 22, 2010, which provided relief from the automatic stay (the "December Order"). A hearing was held in Raleigh, North Carolina, on November 27, 2012. For the reasons that follow, the motions will be denied.

### BACKGROUND

The male debtor (the "debtor") is a chiropractor licensed to practice chiropractic medicine in North Carolina and was an associate with Crabtree Chiropractic Center, P.A. from September of 2004 until approximately July of 2009. On July 1, 2010, Ms. Melin (hereinafter "the plaintiff") filed

a complaint in Wake County Superior Court asserting medical malpractice claims against the debtor and the co-defendants. At the time of the alleged acts of malpractice, Allied Professionals Insurance Company Risk Retention Group, Inc. ("Allied") was providing professional liability insurance to the debtor.

On October 13, 2010, the debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. On December 21, 2010, the debtor, plaintiff, and the co-defendants filed a motion seeking court approval of an agreement for relief from the automatic stay so that the plaintiff and co-defendants could pursue their state law causes of action against the debtor.[1] The court approved the agreement in the December Order, specifically allowing the plaintiff and co-defendants to: (1) communicate with Allied concerning their state law claims; (2) continue their civil action against the debtor through his malpractice insurer; (3) settle the civil action with Allied or prosecute it to a verdict; and (4) recover from Allied the amount of any damages. The December Order prohibited the plaintiff and co-defendants from seeking any recovery from the debtor personally but, to the extent there was no recovery from Allied, allowed them to seek recovery from the debtor through the bankruptcy proceeding.

On February 22, 2011, the debtor received his discharge. Shortly thereafter, Allied informed the debtor that there was no coverage for the plaintiff's claim against him because in the context of the debtor's Chapter 7 bankruptcy, the December Order provided that the plaintiff "may not seek any recovery from the Debtors, personally," which Allied construed to mean that "there cannot be any sums which '[the debtor] shall become legally obligated to pay as damages,'" such that "there

---

[1] The co-defendants sought relief from the stay to pursue any potential indemnification and contribution rights against the debtor.

2

is no potential for coverage regarding the Claim." Aff. of Rick Cigel (Letter from Rick A. Cigel to Christian D. Werness of April 6, 2011).

On April 21, 2011, Allied moved to amend the December Order to address its concerns that the order as written could imply that Allied "has already been adjudged to be liable for any settlement or verdict," or might be interpreted to waive or alter provisions of the insurance policy and/or defenses that might be available to Allied. Allied's Mot. to Alter or Amend Order Approving Stip. Agmt to Mod'n of Stay (April 21, 2011) at ¶¶ 5, 6. No responses or objections to the motions were filed. Using language requested by Allied, the amended order entered on May 24, 2011, recited that nothing in the order "shall be deemed to waive any legal or equitable defenses or counterclaims which [Allied] may assert in defense of any claims against it or the insured or to otherwise make any findings or decisions affecting the merits of the claims asserted in the case." Amended Order Approving of Stipulation Agreeing to Modification of Stay (May 24, 2011) (the "May Order").

On November 22, 2011, after the debtor received his discharge, the Chapter 7 trustee filed objections to a number of claims, including the plaintiff's claim. On December 16, 2011, this court entered a consent order between the plaintiff and the trustee (the "Consent Order") denying the plaintiff's claim as to any bankruptcy estate liability, but permitting the plaintiff to proceed with her state court action against the debtor to the extent that there is any insurance coverage. The Consent Order specifically provides that the plaintiff's claim may "continue unabated to the extent of Insurance Liability"; i.e., coverage for any potential liability of the debtor in the plaintiff's state court action. Consent Order on Objection to Claim 6 (Dec. 16, 2011).

3

On December 23, 2011, the plaintiff and co-defendants initiated an adversary proceeding seeking a declaration that: (1) the debtor was required to carry professional liability insurance with limits of not less than one million dollars per occurrence; and (2) that Allied issued an insurance policy to the debtor that covers the plaintiff's claims and any potential indemnification or contribution claims by the co-defendants. The plaintiff and co-defendants further requested that the bankruptcy court "declare all rights and obligations of the parties arising under the [insurance] [p]olicy." On April 13, 2012, prior to the resolution of the adversary proceeding and as a result of a clerical error in the clerk's office, the debtor's bankruptcy case was closed. On August 6, 2012, the court granted Allied's motion to dismiss the adversary proceeding for lack of jurisdiction. The court did state, however, that it retained authority to "clarify or further modify [the December Order] to more clearly set forth the intent of the parties, upon request of a party in interest."

On October 8, 2012, the debtor moved to reopen the bankruptcy case and to hold the plaintiff in contempt of court for violation of the discharge injunction, which motion is currently before the court to decide.[2] The debtor argued in the contempt motion that the automatic stay and the discharge injunction are two separate and distinct bankruptcy protections, and that while the December Order modified the automatic stay, it did nothing with respect to the discharge injunction. Accordingly, the debtor contends, the plaintiff's continuation of the state court proceedings against the debtor is an attempt to collect a discharged debt, and thus constitutes a willful violation of the discharge injunction. The debtor also argues that in light of the fact that Allied has denied coverage, the

---

[2] The case was reopened by an administrative order dated October 12, 2012, so the portion of the motion seeking to reopen the case is moot.

4

plaintiff is violating the terms of the December Order that prohibit the plaintiff and co-defendants from seeking "recovery from the Debtors, personally."

On October 24, 2012, the co-defendants filed a response to the debtor's motion for contempt along with their own motion to modify the December Order. They argue that although the language of the December Order may create unintended ambiguity, the parties never intended for that order to determine any issues as to insurance coverage or liability, or to in any way suggest that the plaintiff was prohibited from pursuing her state civil action against the debtor. The co-defendants further contend that Allied could very well be obligated to provide coverage for the plaintiff's cause of action, despite the insurance company's own denial. On November 14, 2012, the plaintiff filed a response to the motion for contempt, along with a motion to modify, that wholly adopts and incorporates the co-defendants' response and motion.

## DISCUSSION

The automatic stay under § 362 of the Code arises upon the filing of a bankruptcy petition. Estate Const. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 219 (4th Cir. 1994). The stay "generally prevents third parties from taking action that could affect the property of the bankruptcy estate." U.S. v. Carolina Parachute Corp., 907 F.2d 1469, 1471 (4th Cir. 1990). Specifically, it prohibits, in relevant part, the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1). Subject to §§ 362(d), (e) and (f) of the Code, the stay of an act against property of the estate continues in effect until the property is no longer property of the estate, and the stay of any other act continues in effect until the case is either

closed, dismissed, or, "if the case is a case under chapter 7 of this title concerning an individual [,] . . . *the time a discharge is granted or denied.*" 11 U.S.C. § 362(c)(1)-(2) (emphasis added).

As § 362(c) provides, if the creditor's act is against property that is not property of the estate, the stay as to that act no longer continues in effect once a discharge is granted or denied in individual Chapter 7 cases. Stated differently, once a discharge is granted, the automatic stay is "dissolved and is replaced by the permanent injunction of 11 U.S.C. § 524." Wimmer v. Mann (In re Mann), 58 B.R. 953, 956 (Bankr. W.D. Va. 1986); see also In re Jason Pharmaceuticals, Inc., 224 B.R. 315, 321 (Bankr. D. Md. 1998) (stating that a discharge "replaces the automatic stay with a permanent injunction arising under Section 524(a)"); In re McGraw, 18 B.R. 140, 142-43 (Bankr. W.D. Wis. 1982) (stating that the stay is "superseded by the injunction invoked by discharge").

Section 524(a)(2) of the Code provides that a discharge "operates as an injunction against the commencement or continuation of an action . . . *to collect, recover or offset* any such debt *as a personal liability* of the debtor." 11 U.S.C. § 524(a)(2) (emphasis added). "A discharge in bankruptcy relieves the debtor of personal liability for all pre-petition debts but those excepted under the Bankruptcy Code." River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld), 23 F.3d 833, 836 (4th Cir. 1994), cert. denied, 513 U.S. 874, 115 S. Ct. 200 (1994) (citing 11 U.S.C. § 727). It "operates to permanently stay any attempt to hold the debtor personally liable for discharged debts." Id. (citing 11 U.S.C. § 524(a)(2)). This protection "furthers one of the primary purposes of the Bankruptcy Code–that the debtor have the opportunity to make a financial fresh start" (internal quotations omitted). Green v. Welsh, 956 F.2d 30, 33 (2d Cir. 1992).

However, both the discharge itself and the permanent injunction arising therefrom are "exclusive to the debtor, and do not otherwise affect the enforcement of any underlying debt, or any

6

nondebtor liability thereon." Jason Pharmaceuticals, 224 B.R. at 322; see 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."); see also Food Lion, Inc. v. S. L. Nusbaum Ins. Agency, Inc., 202 F.3d 223, 228 (4th Cir. 2000) (citing § 524(e) and stating that the debt of a party other than the debtor was not discharged in bankruptcy); Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 121 (4th Cir. 1991) ("The law is clear that discharge of a debtor does not affect the liability on the debt of any co-debtors."); Welsh, 956 F.2d at 33 ("Together, the language of these sections [§§ 524(a) and 524(e)] reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit."); Bursch v. Beardsley & Piper, Div. of Pettibone Corp., 971 F.2d 108, 114 (8th Cir. 1992) (stating that the discharge is limited to the debtor and that "a party derivatively liable for the debt, such as an insurer, remains responsible").

When interpreting the scope of the discharge injunction, many courts have allowed a creditor to continue a state court action against a discharged debtor for the sole purpose of recovering against the debtor's insurer. See Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.), 345 F.3d 338, 343 (5th Cir. 2003) ("[C]ourts are in near unanimous agreement that § 524(e) permits a creditor to bring, and proceed in, an action nominally directed against a discharged debtor for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer'") (citing Jason Pharmaceuticals, 224 B.R. at 321); Green v. Welsh, 956 F.2d 30, 33-34 (2nd Cir. 1992) ("Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit."); In re W. Real Estate Fund, 922 F.2d 592, (10th Cir. 1990) ("Indeed, in keeping with the narrow breadth of

[S]ection 524(a) and the mandate of [S]ection 524(e), the fact that the debtor may be involved in the ensuing litigation, even named as a defendant where necessary to enable recovery against a codefendant (such as a liability insurer), does not permit invocation of [S]ection 524(a) to preclude a creditor's post-bankruptcy pursuit of a discharged claim against a third party."); In re Jet Florida Sys. Inc., 883 F.2d 970, 975 (11th Cir. 1989) (allowing plaintiff's state court action to proceed against the debtor in order to recover from the debtor's insurer, stating that the purpose of the discharge injunction is to "protect the debtor and not to shield third parties such as insurers who may be liable on behalf of the debtor").

Courts addressing this issue rely on the language of § 524(a), which merely prohibits a creditor from continuing an action to "collect, recover or offset" the discharged debt as a "personal liability" of the debtor, as well as the existence of Section 542(e), which provides that the discharge does not affect the liability of any entity other than the debtor. See e.g., In re Jet Florida Sys., 883 F.2d at 976 (relying on the "plain language of [S]ection 524" to hold that the injunction did not prohibit the plaintiff from proceeding against the debtor in order to recover from the debtor's insurer); In re McGraw, 18 B.R. 140, 143 (Bankr. W.D. Wis. 1982) (stating that "the statutory language itself, places limits on the scope of the 11 U.S.C. § 524 injunction," and that "[t]he injunction is only required when the continuance of a civil suit will result in efforts to collect from the debtor or his property a judgment award"). Courts also justify this outcome as a matter of good policy, stating, for example, that allowing this type of state court action does not "frustrate the policy of the Bankruptcy Code in giving the [d]ebtor a fresh start in his economic life." Jet Florida Systems, 883 F.2d 970, 976; see also e.g., In re Coho Res., Inc., 345 F.3d 338, 343 (5th Cir. 2003) ("[I]t makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely

8

because the insured receives a bankruptcy discharge."); Nat'l Union Fire Ins. Co. v. Porter Hayden Co., 2012 U.S. Dist. LEXIS 29568, at *15-16 (D. Md. Mar. 6, 2012) ("The notion that bankruptcy of the insured should not accrue to the benefit of the insurers is well-established."). Of course, the caveat is that allowing the state court action to proceed "is necessarily conditioned upon the debtor's being exempted from any exposure to personal expense of liability, resulting from the creditor's action, which would imperil its fresh start." Jason Pharmaceuticals, Inc., 224 B.R. at 323 (internal quotations omitted).

Although courts overwhelmingly agree on the end result, they tend to differ on what must be done procedurally to allow a creditor to continue its state court action against the debtor for purposes of recovering from the debtor's insurer. See e.g., 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 524.05 (16th ed. rev. 2012) (providing that some courts have ruled that these actions are simply not within the scope of a discharge injunction because they do not seek to recover a debt as a personal liability of the debtor, and other courts achieve the same result by permitting modification of the discharge injunction); see also Green v. Welsh, 956 F.2d 30, 33-34 (2d Cir. 1992) (providing a thorough summary of how courts have reached the same result by different procedural mechanisms). Many courts simply allow the state court action to proceed without finding it necessary to modify the discharge injunction, stating that the injunction does not apply to these types of actions. See e.g. Welsh, 956 F.2d at 36 ("In sum, we find that the discharge injunction under §§ 524(a) and 524(e) permits Green [the plaintiff] to continue her suit against the Welshes [the debtors] without requiring her to obtain a modification of the injunction[.]"); Jet Florida Sys., 883 F.2d at 976-77. Others allowing continuation of the state court proceedings by modifying the injunction. See e.g. In re Walker, 927 F.2d 1138, 1143-44 (10th Cir. 1991)

(reversing bankruptcy court and granting plaintiffs' motion to modify the discharge injunction). Finally, a few courts achieve the same result by modifying the automatic stay. See e.g., Elliott v. Hardison, 25 B.R. 305, 309 (E.D. Va. 1982) (affirming bankruptcy court's decision to grant plaintiff relief from automatic stay after debtor received a discharge); McGraw, 18 B.R. at 143 (modifying both the automatic stay and the discharge injunction in allowing the proceedings to continue).

In the instant case, the debtor was granted a discharge on February 22, 2011. The December Order modifies the automatic stay and contains no provisions with respect to the discharge injunction. The court agrees with the debtor that the December Order does not, in and of itself, resolve the issue of whether the state court action is barred by the discharge injunction.[3] However, the December Order does clarify the parameters of the state court action, and in that sense, it provides some guidance for determining whether the action is of the type that is barred by the injunction.

More specifically, the December Order allows the plaintiff and co-defendants to prosecute their state court action to a verdict, but the language in the order explicitly prohibits the parties from seeking any recovery from the debtor personally. In comparison, the Consent Order, which was entered after the debtor received his discharge, also allows the state court action to continue, but only *to the extent that there is insurance coverage for any potential liability*. The December Order and the Consent Order, when considered together, clarify that the state court action will continue

---

[3] As a side note, however, the December Order does provide that the plaintiff and co-defendants may attempt to seek recovery from the debtor to the extent that they are unable to recover from Allied. That order was amended on May 24, 2011. The May 24, 2011 Order neglected to consider the effect of the discharge that had been entered on February 22, 2011. It is likely that the discharge injunction bars the parties from seeking any recovery from the debtor, even through the bankruptcy case, regardless of whether they fail to recover from Allied.

solely to determine liability of the debtor for the ultimate purpose of seeking any recovery from Allied. As previously explained, the discharge injunction does not apply to these types of state court actions that are nominally directed against the debtor for the sole purpose of recovering from the debtor's insurer. Because the discharge injunction does not apply, there is no need to modify it. Further, even assuming that the automatic stay is still in effect,[4] additional modifications of the December Order are unnecessary because the December Order and the Consent Order together sufficiently set out the parameters of the state court action and prohibit any recovery from the debtor personally. Therefore, the plaintiff and co-defendants are neither violating the discharge injunction nor the terms of those two orders by continuing their state court action, so long as it is confined to the purpose of determining the extent of the debtor's insurance liability in order to ultimately recover any damages for which Allied may be responsible.

Although Allied has denied insurance coverage, that denial was based on Allied's interpretation of the December Order and apparent understanding that the debtor would no longer be personally obligated to pay any damages. The December Order does not stand for that proposition, and *there has been no determination by a court of competent jurisdiction as to the issue of coverage*. Allied even acknowledged that the question of its liability for coverage has not been resolved by this court when it sought to amend the December Order, which also occurred after

---

[4] The court recognizes that there may be an issue as to whether the automatic stay is still in effect, which ultimately depends on whether the insurance policy and the proceeds therefrom are property of the estate. See 11 U.S.C. § 362(c)(1) (providing that "the stay of an act against property of the estate . . . continues until such property is no longer property of the estate"). This involves issues as to whether the insurance policy and the proceeds from it were ever property of the estate, and if so, whether they are no longer property of the estate pursuant to Section 554(c) of the Code. See 11 U.S.C. § 554(c) (providing that "any property scheduled . . . not otherwise administered at the time of the closing of a case is abandoned to the debtor . . ."). However, the court need not address these issues because their resolution will not affect this ruling.

discharge, so as to preserve all "legal or equitable defenses or counterclaims" in the event that any claims are brought against it. In fact, the plaintiff and co-defendants have represented to the court that they do intend to contest Allied's denial of coverage, and to deny them the ability to do so based on the debtor's discharge would not comport with the well-established policy that the "bankruptcy of the insured should not accrue to the benefit of the insurers." Nat'l Union Fire Ins. Co. v. Porter Hayden Co., 2012 U.S. Dist. LEXIS 29568, at *15-16 (D. Md. Mar. 6, 2012).

For the foregoing reasons, the debtor's motion for contempt is **DENIED** provided that the plaintiff's and co-defendants' continuation of their state court action remains for the sole purpose of proving liability of the debtor as a prerequisite of seeking any recovery from Allied. Finding that no cause exists to modify the December Order, the plaintiff's and co-defendants' motions to clarify that order are also **DENIED**.

**SO ORDERED**.

<div style="text-align:center">**END OF DOCUMENT**</div>